UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MONDELEZ GLOBAL INC,

    Plaintiff,

    v.

ASSOCIATED MILK PRODUCERS, INC.,

    Defendant.

Case No. 1:20-cv-06512
Hon. Judge Franklin U. Valderrama

**MEMORANDUM IN SUPPORT OF DEFENDANT AMPI'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Federal Rule 50(a), the Court should enter judgment as a matter of law in favor of Defendant Associated Milk Producers, Inc.'s ("AMPI") on Plaintiff Mondelez Global Inc.'s claims for breach of express warranty, breach of implied warranty, and express indemnification.[1]

As demonstrated below, the evidence at trial[2] establishes that Mondelez lacks standing to recover damages from AMPI arising from AMPI's sale of whey powder to Hearthside Foods Solutions LLC ("HFS"), which are governed by AMPI's contracts with HFS (the "HFS Purchase Orders"). Moreover, Mondelez's claims based on its own purchase of whey powder from AMPI fail because the undisputed record demonstrates that Mondelez did not recall any whey powder delivered from AMPI and therefore did not suffer any damages as a result of those shipments.

---

[1] This written memorandum supplements the arguments raised by AMPI in its oral motion for judgment as a matter of law presented at trial on February 9.
[2] The Court granted judgment as a matter of law under Rule 50(a) in AMPI's favor on Count IV, breach of contract.

And finally, Mondelez failed to adduce any evidence to support its entitlement to first-party indemnification under the terms of the HFS Purchase Orders.

## ARGUMENT

Rule 50(a) permits a Court to enter judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find" in favor of a party. Fed. R. Civ. P. 50(a)(1). In other words, judgment as a matter of law is appropriate where a plaintiff has not presented enough evidence to allow a rational jury to find in its favor. *See Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924-25 (7th Cir. 2000). In evaluating a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Alexander v. Mt. Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007). This standard is fundamentally the same as summary judgment, except the Court now knows exactly what evidence was put before the jury. *See Massey*, 226 F.3d at 924-25.

### I. Mondelez's Warranty Claims Under the HFS Purchase Orders Fail Because It Lacks Privity.

Mondelez's claims for breach of express and implied warranty are based on damages purportedly caused by Mondelez's recall of finished products hat Mondelez purchased from third-party HFS, which separately contracted with AMPI to purchase whey powder and supplied products incorporating whey powder to Mondelez.[3] (2/2/23 Rough Tr. at 30-31; 2/3/23 Rough Tr. at 163-66 (Mondelez not a party to the orders between AMPI and HFS); PTX 34 at ¶ 1.) Indeed, all promises and warranties related to the sale of whey powder to HFS are set forth in the

---

[3] Mondelez argues that its damages all flow from damage to its Ritz family brand, ignoring that all of its claimed damages arise from the recall of products manufactured from whey powder delivered from AMPI to HFS.

- 2 -

express language of the HFS Purchase Orders, which are fully integrated contracts. It is undisputed (and expressly admitted by Mondelez) that Mondelez is not a party to the HFS Purchase Orders. (*Id.*) And the express terms of the choice of law provision in the HFS Purchase Orders establish that Wisconsin law governs all enforcement, interpretation, application, and disputes arising from the HFS Purchase Orders. (PTX 34 at ¶ 20.)

Under Wisconsin law, Mondelez has no viable claim for breach of express or implied warranty for the whey powder that AMPI sold to HFS under the HFS Purchase Orders because Mondelez is not in privity of contract to the HFS Purchase Orders that governed those sales. Wisconsin law always requires privity of contract to bring express and implied warranty claims. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2011 WI App 101, ¶ 72, aff'd, 2012 WI 70, ¶ 72 (quoting *Dippel v. Sciano*, 37 Wis. 2d 443, 449 (1967)) ("Wisconsin has always required privity of contract in an action for a breach of implied warranty."); *La Crosse v. Schubert Schroeder Associates, Inc.,* 72 Wis. 2d 38, 39-42 (1974); *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 215 (E.D. Wis. 1984) ("Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty."); *Paulson v. Olson Implement Co.,* 318 N.W.2d 855, 857-859 (finding that privity requirement met where plaintiff buyer entered into a unilateral contract with manufacturer).

Mondelez has argued that Illinois law, rather than Wisconsin law, should control its warranty claims based on separate agreements related to Mondelez's purchase of whey powder from AMPI referenced in the Mondelez Purchase Orders with AMPI. (Dkt. 102-1 at ECF 2.) But the Mondelez Purchase Orders and sales of whey powder from AMPI directly to Mondelez do not involve HFS and are irrelevant to the claims based on the whey powder supplied by AMPI to HFS pursuant to the HFS Purchase Orders. And as demonstrated below, to the extent Mondelez's

warranty claims are based on its own purchase orders with AMPI instead of the HFS Purchase Orders, these claims fail because Mondelez suffered no damages from its purchase of whey powder from AMPI. (*See infra* at 7-8.)

Mondelez has also argued that Illinois law should control because there is no conflict of law between Illinois and Wisconsin law, arguing that neither state requires privity of contract to bring warranty claims. But Wisconsin law plainly forecloses such claims where there is no privity of contract. *E.g.*, *Kriefall,* 2011 WI App 101 at ¶ 72; *Twin Disc*, 582 F. Supp. at 215. In *Kriefall,* the Wisconsin Court of Appeals held that a franchisee restaurant that sustained damage after selling meat contaminated with e-coli to customers could not assert a viable claim for breach of warranties against the supplier because it did not have privity of contract with the supplier. 2011 WI App 101 at ¶ 72. Mondelez has argued that another portion of the *Kriefall* decision found that privity of contract was not required for a franchisor (not the franchisee) to bring warranty claims against a supplier. But in reality, the court found that the franchisor was in privity of contract where it was expressly identified as the "buyer" and "'contract[ed] to buy' the meat" in the agreement. *Id.* at ¶ 23.

Because Wisconsin and Illinois law conflict, the Court must apply Wisconsin law because the choice of law provision in the HFS Purchase Orders controls. *Midwest Grain Prods. Of Ill., Inc. v. Productization, Inc.,* 228 F.3d 784, 787-89 (7th Cir. 2000) (Illinois courts uphold choice of law provisions in contracts and apply the law of the chosen state; applying law of the parties' chosen state to plaintiff's third-party breach of warranty claim); *see also Casting, Inc. v. Treiber*, 162 Ill. App. 3d 562, 569, (2d Dist. 1987) ("[A] party relying on a third-party beneficiary theory must take the contract as the original parties made it and is bound by all of its provisions.").

Because Wisconsin law controls, Mondelez was required to have privity of contract to proceed with its breach of warranty claims. And the undisputed evidence at trial establishes that Mondelez was not a party or otherwise in privity of contract to the HFS Purchase Orders. (PTX 34; Rough Tr. 02/03/23 at 122 ("Was Mondelez involved in that process in terms of the mechanics of how it worked? No."), 163-166 (Vela agreeing that MDLZ is not a party to the HFS Purchase Order PTX 34); Rough Tr. 02/06/23 at 148 (HFS director of procurement testifying that PTX 34 is a typical HFS Purchase Order to AMPI.), 183 (Mondelez is a third-party).) Thus, its warranty claims fail as a matter of law.

## II. Mondelez Is Not a Third-Party Beneficiary of the HFS Purchase Orders.

To the extent Mondelez's claims are based on its argument that it is a third-party beneficiary of the HFS Purchase Orders, these claims fail as a matter of law. Under Wisconsin law, as the party claiming to be a third-party beneficiary, Mondelez must show that the HFS Purchase Orders were entered into by the contracting parties directly and primarily for its benefit. *Schilling by Foy v. Employers Mut. Cas. Co.,* 212 Wis. 2d 878, 886-87 (Wis. Ct. App. 1997); *see also* Dkt. 101-3 at 44 (Mondelez's proposed jury instruction; "Mondelēz must prove by preponderance of evidence that the agreement between HFS and AMPI for the supply of whey powder was intended to primarily and directly benefit Mondelēz."). Where a contract is silent on a term, extrinsic evidence cannot be used to establish third-party beneficiary status. *See* Wis. Stat. § 402.202 ("terms . . . set forth in a writing intended by the parties as a final expression of their agreement. . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement"); *Emirat AG v. High Point Printing LLC,* 248 F. Supp. 3d 911, 932 (E.D. Wis. 2017) (quoting *Farnsworth on Contracts* § 10.3 (3d ed. 2004)) ("if a completely integrated agreement is silent as to intention to benefit [a third-party], evidence of

- 5 -

prior negotiations to show such an intention should not be admitted because it would, in effect, be used to add a term.").

Mondelez introduced a trove of evidence regarding a course of dealing suggesting that AMPI was aware that the whey powder sent to HFA would be later used for Mondelez products. But that evidence is insufficient to prove warranty claims for two reasons.

***First***, the HFS Purchase Orders are fully integrated. Indeed, the first paragraph contains an unambiguous integration clause (PTX 34, HFS Purchase Order ¶ 1), meaning that evidence of intent to benefit a third-party must be derived from the express terms of the HFS Purchase Orders itself. *Schilling by Foy,* 212 Wis. 2d at 886-87. And ***nowhere*** do the HFS Purchase Orders state that Mondelez is a third-party beneficiary to the contract. Nor do they reference Mondelez's supplier quality expectations manual or any other agreement related to the sale of whey powder to HFS. Because the HFS Purchase Orders are silent regarding whether they were intended to benefit a third party, extrinsic evidence is inadmissible because its introduction does not explain a term in the contract but seeks to introduce a term that does not exist. And although Mondelez has pointed to two references in the HFS Purchase Orders, neither reflect that Mondelez is a third-party beneficiary. The HFS Purchase Orders refer to a fourteen-digit item number, "04050006275800," which Mondelez contends is its SAP number for dry whey powder. The HFS Purchase Orders also have a notation that states "Mondelez HFS London Account # 100000227." But the HFS Purchase Orders do not state the meaning or explanation of either. Indeed, it is not even indicated that the first fourteen-digit number is in any way related to Mondelez.

***Second***, all of the extrinsic evidence adduced at trial by Mondelez at best established that AMPI was aware that HFS would be sending whey powder to Mondelez. But that is not enough

to establish under Wisconsin law that Mondelez was the *primary* beneficiary (which was HFS), as opposed to an incidental beneficiary. *See Emirat*, 248 F. Supp. 3d at 931-32 ("The Seventh Circuit has noted that in various jurisdictions 'courts have also been reluctant to recognize third-party rights based solely on the fact that the contracting parties were aware of the third person's relationship to the transaction. For example, courts have generally held that a third party is not a beneficiary of a sales agreement merely because both contracting parties knew that the product would be resold to the third party, or to a class of which the third party was a member. Even where the subsequent purchaser is mentioned by name in the contract, such a third party is 'no more than a known remote buyer' in the absence of further evidence of an intent to benefit the third party.'") (citing *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 911 (7th Cir. 1989)).

Because it is undisputed that Mondelez is not a party to the HFS Purchase Orders, and because Mondelez fails to show that the HFS Purchase Orders were entered into directly and primarily for Mondelez's benefit, Mondelez's third-party beneficiary claims fail.

### III. Any Warranty Claims for Damages Based on the Mondelez Purchase Orders Fail Because It Is Undisputed that Mondelez Did Not Recall AMPI Whey.

To the extent Mondelez's breach of warranty claims are based on the Mondelez Purchase Orders, these claims fail for the additional reason that there are no damages because it is undisputed that that none of the whey powder that AMPI directly sold to Mondelez resulted in the recall of any of Mondelez's finished products. (2/3/23 Rough Tr. at 45-47; 64-65 (Mondelez employee Kevin Lilley, overseeing supplier quality for North America, admitted that AMPI products sold to Mondelez did not lead to recalls); 68-69 (Mondelez did not need to recall its products with whey sold by AMPI); 227-229 (Mondelez director of quality Carol Driesse testified that Mondelez did not need to recall any products containing whey sold to it by AMPI).

Both Mondelez's express and implied warranty claims require that Mondelez prove that it sustained damage resulting from a breach of a warranty. (*See* Dkt. 101-3 at 28-40 (Mondelez proposed jury instructions for breach of express and implied warranty); Wis. Stat. §§ 402.714, 715.) But Mondelez introduced no evidence that it sustained any damages from its purchase of whey powder from AMPI. Rather, the evidence of damages that Mondelez introduced at trial were all purportedly caused by Mondelez's recall which resulted from HFS manufacturing product with recalled whey powder that HFS purchased from AMPI.[4] Mondelez *admits* that none of the whey powder that AMPI directly sold to Mondelez resulted in the recall of any of its finished products or any other damages. (2/3/23 Rough Tr. at 45-47; 64-65; 68-69; 227-229.) Moreover, Mondelez's assertion that AMPI was required to notify it regarding any quality issues with its whey powder also arises from its agreements with AMPI, which did not result in any recalled products. Thus, Mondelez has offered *no* evidence of damages caused by any breach of the Mondelez Purchase Orders.

In sum, the evidence adduced at trial established that Mondelez's express and implied warranty claims based on its agreements with AMPI are not viable because AMPI did not breach any warranty that caused Mondelez's alleged damages.

### III. Mondelez Failed to Establish that the Indemnification Provision Permits First Party Indemnification.

---

[4] Through the testimony of Patty Gonzalez, Maria Pia Iriarte Heredia and its expert Jill Powell, Mondelez presented evidence that its recall caused damages under the following five categories: (1) the value of the recalled Ritz product inventory; (2) lost profits on sale of additional Ritz products allegedly caused by brand negativity due to the Ritz recall; (3) compensation Mondelez paid to its customers due to the recall; (4) incremental expenses incurred in implementing the Ritz recall; (5) Incremental marketing expenses allegedly spent to mitigate damages resulting from the Ritz recall.

Finally, as this Court is aware, AMPI moved to bar evidence or argument that it is obligated to indemnify Mondelez for Mondelez's own losses or damages (first-party indemnification) because the express language of the indemnification provision in the HFS Purchase Orders (Paragraph 10) limits AMPI's indemnification liability to third-party claims. (Dkt. 75 at 4-7.)[5] In response, Mondelez argued, *inter alia*, that the provision was ambiguous and that the question of whether it provides for first-party indemnification is a fact issue to be resolved by the jury. The Court denied the motion, ruling that "the indemnification clause is, at minimum, ambiguous, thus raising an issue of fact for the jury to decide." (Dkt. 116 at 7.)

Now that evidence on this claim at trial has concluded, the Court should enter judgment as a matter of law in AMPI's favor.

First, Paragraph 10's own language makes clear that AMPI agreed to indemnify for third-party claims. Paragraph 10 is inconsistent with first-party indemnification because it is a blanket indemnification provision that includes a duty to "indemnify and save harmless Buyer, and any customer of Buyer" from any "claims" and "costs or losses." This broad language is inconsistent with first-party indemnification as it makes little sense for AMPI to hold harmless HFS and its customers for injuries that AMPI allegedly causes. *See NAR Bus. Park, LLC v. Ozark Automotive Distributors, LLC*, 430 F. Supp. 3d 443, 461 (N.D. Ill. 2019) (clause limited to third-party indemnification claims where the indemnitor was required to "indemnify and hold harmless" the

---

[5] Mondelez has also asserted the right to indemnification under Paragraph 11, but that provision does not apply because it covers "injuries to persons or property in any way ***arising out of or resulting from the storage, purchase, consumption or use*** of goods covered by this order," not the "incorporation of" the goods. Of course, the injuries resulting from the incorporation of the goods are expressly covered by the indemnification provisions of Paragraph 10, which provides that seller agrees to indemnify and save harmless the Buyer and its customers for "for or on account of any alleged adulteration or misbranding referred to above, or (2) any costs or losses incurred by Buyer resulting from Buyer's use or incorporation of any of the articles in products manufactured by Buyer."

"Defendant and its representatives and subsidiaries" because this "language [is] inconsistent with first-party indemnification"); *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 254-55 (3d Cir. 2010) (provision in contract applied only to third-party indemnification claims; this was the "only sensible reading" because seller could not "defend" the buyer from itself , "hold harmless" the buyer for its wrong, "indemnify" the buyer for its own loss); *NevadaCare, Inc. v. Dept. of Human Servs.*, 783 N.W.2d 459, 471 (Iowa 2010) (language of provision indicated intent to cover only third-party indemnification claims where indemnitor agreed to "defend, indemnify and hold the State of Iowa and the Department, and their officers, agents and employees, harmless from any and all liabilities, damages, [etc]"); *Nova Research, Inc. v. Penske Truck Leasing Co.*, L.P., 952 A.2d 275, 288-89 (Md. 2008) (similar provision excluded first-party indemnification claims where it did not "provide expressly for recovery in first party enforcement actions."); *Luna v. American Airlines*, 769 F. Supp. 2d 231, 243-44 (S.D.N.Y. 2011) (provision excluded first-party indemnification claims where indemnitor agreed to "defend, indemnify, and hold us harmless from and against any and all liabilities . . . that may be charged to, asserted against or incurred by us…"). Moreover, the last clause, which applies to claims resulting from HFS's incorporation of AMPI's whey powder into products manufactured by HFS, is limited to HFS's (the Buyer) costs or losses incurred and, unlike other provisions, does not extend to the costs or losses incurred by HFS's customers.

Second, as the Court made a finding that this provision is ambiguous, Mondelez was required to set forth evidence in support of its claims for first-party indemnification to allow the factfinder to resolve that ambiguity. But at trial, Mondelez adduced *no* competent evidence that the parties intended the indemnification clause to cover first-party claims. Thus, to the extent the indemnification provision of the HFS Purchase Orders is ambiguous, Mondelez failed to

substantiate its right to recovery under this provision. *See, e.g.*, *Ehlinger v. Hauser*, 325 Wis. 2d 287, 334-36 (2010) ("If an essential term of an agreement is indefinite, it renders the contract unenforceable and our analysis of the alleged agreement ends with that determination.") (citations omitted); *Nielsen v. Bridlewood Estates of Lake Geneva Condo Owners Assoc.*, 2023 Wisc. App. LEXIS 31, at *3 (Ct. App. Jan. 11, 2023) (affirming circuit court's finding that restrictive covenant was "ambiguous and therefore unenforceable.") (unpublished); *see also Wilson v. Middendorf*, 248 Ill .App. 3d 870 (3rd Dist. 1993) ("If the material terms of the contract were ambiguous, the contract was unenforceable").

## CONCLUSION

For the foregoing reasons, the Court should enter judgment as a matter of law in AMPI's favor and dismiss with prejudice Mondelez's claims for breach of express warranty, breach of implied warranties, and express indemnification.

Dated: February 9, 2023

By: */s/ Carlos A. Vera*
    One of Its Attorneys

Joseph R. Marconi
Carlos A. Vera
JOHNSON & BELL, LTD.
33 W. Monroe Street, Suite 2700
Chicago, IL  60603
marconij@jbltd.com
verac@jbltd.com
Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

                    */s/ Carlos A. Vera*